This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**LOVELACE RESPIRATORY RESEARCH INSTITUTE,**

Plaintiff-Appellant,

**v.**                                                  NO. 28,648

**THE FUNDING CONNECTION, INC., GARY DEFRANCESCO,**

Defendants-Appellees,

and

**DAVID ROSENZWEIG,**

Defendant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Valerie M. Huling, District Judge**

Modrall, Sperling, Roehl,
 Harris & Sisk, P.A.
Charles A. Armgardt
Jason C. Bousliman
Albuquerque, NM

for Appellant

Gary DeFrancesco

New York, NY

Pro Se Appellee

**MEMORANDUM OPINION**

**VIGIL, Judge.**

Plaintiff appeals from the district court's order which partially granted Plaintiff's motion to enforce a settlement agreement. We agree with Plaintiff that it was error not to fully enforce the settlement agreement. We therefore reverse and remand for further proceedings in accordance with this opinion.

**BACKGROUND**

In 2000 and 2001, Plaintiff retained The Funding Connection, Inc. and Gary DeFrancesco (Defendant) to raise $40 million in the form of charitable donations by January 31, 2003. Plaintiff paid Defendant nearly $1 million under the parties' contract. Defendant failed to raise the funds as required under the contract by the set date. Plaintiff sued Defendant in May 2005 alleging breach of contract, breach of duty of good faith and fair dealing, fraud, unfair trade practices, negligent misrepresentation, breach of fiduciary duty, unjust enrichment, willful and malicious injury, and prima facie tort.

In September 2006, the district court entered an order of referral to settlement conference and appointment of facilitator as part of settlement week 2006. A

settlement conference took place on October 24, 2006, with the result that Plaintiff and Defendant signed an agreement (Letter Agreement) to settle the case.

The Letter Agreement sets forth a "debt" owed by Defendant to Plaintiff in the amount of $425,000. The letter specifies "the payment [is] due in monthly installments as follows: $50,000 February 2007, $5000 each month commencing March 2007, except that $20,000 shall be due each February commencing February 2008, all continuing until the debt is paid in full; and with the debt backed by a promissory note." Plaintiff also agreed to "forgive" $50,000 of the $425,000 if $375,000 was paid by January 1, 2009. Upon payment of the debt in full, Plaintiff would dismiss the suit with prejudice.

The Letter Agreement also required Defendant to procure an appraisal and title search of his Santa Fe property for the purpose of being able to grant a mortgage against the property to Plaintiff in the amount of $425,000 in the event that Defendant defaulted. If Plaintiff deemed the results of the appraisal to be satisfactory, the agreement would move forward. Defendant agreed to this. This contingency is known as the "Security Contingency." The agreement was also contingent upon Defendant advising Plaintiff that $50,000 was available to make the February 2007 payment—the "Notice Contingency."

On October 31, 2006, Defendant advised Plaintiff that he "accept[ed] the offer

3

set forth on the 24th" because he had secured the $50,000 to make the February 2007 payment. However, the appraisal and title search of the Santa Fe property revealed that there was only about $50,000 of equity in the property—an amount insufficient to serve as security for the debt. After additional communication, Defendant made an offer that, in addition to the mortgage, if he was late in making a monthly payment, Defendant "is required to withdraw that amount from his retirement to pay the payment within a certain amount of time and pay a penalty." Plaintiff agreed, and Defendant confirmed the modified agreement by e-mail on January 11, 2007.

On January 17, 2007, documents reflecting the Letter Agreement were sent to Defendant for review. On January 31, 2007, Defendant sent an e-mail objecting to the agreement as set forth in those documents and proposed changes that were inconsistent with the original agreement and subsequent modifications. Specifically, he (1) objected to the mortgage on the Santa Fe property as originally agreed to; (2) stated that he would be unable to pay the monthly payments on the first of every month as originally set forth and proposed an alternative; (3) advised that he would be unable to make the initial $50,000 payment; and (4) objected to the wording, claiming that it would allow Plaintiff to access his retirement account directly and, in the event Plaintiff failed to make a monthly payment, he understood the provision to allow Plaintiff to withdraw the total amount owed.

Plaintiff responded by reminding Defendant that the agreement as set forth in the Letter Agreement and subsequent correspondence was binding and by clarifying the language of the provision that Defendant objected to. Specifically, Plaintiff noted that the agreement stated that Defendant "shall" be required to withdraw any necessary funds from his retirement fund to fulfill his monthly obligations, not Plaintiff. Plaintiff further informed Defendant that if he failed to perform, Plaintiff would seek an order to enforce the settlement agreement.

Defendant failed to perform and, on February 6, 2007, Plaintiff filed a motion to enforce settlement agreement. At the hearing on the motion, both parties and the district court agreed that they had reached an enforceable agreement. The dispute related to the wording of the retirement-related provision. Defendant was concerned that the provision could be read as an acceleration clause giving Plaintiff the right to require Defendant to withdraw the total amount owed if he defaulted. Additionally, Defendant wanted to be able to sell his Santa Fe property and asked Plaintiff to release the mortgage in the amount in excess of the sales price minus the encumbrances in the event that he decided to sell. Plaintiff disagreed with Defendant's interpretation of the retirement-related provision clarifying that: (1) in the event of a default, the provision would only allow Plaintiff to require Defendant to make a limited withdrawal from his retirement account for the purpose of making a missed payment; and (2) Plaintiff

would not have direct access to the account; Defendant alone would make any necessary withdrawals; and if the payments were missed, Plaintiff could ask for specific performance. Plaintiff also agreed to release the mortgage in the event of a sale, as requested by Defendant.

After the parties agreed on the meaning of the retirement-related provision and the mortgage, the district court said: "We have a settlement. Prepare the paperwork, and get it done. You have a settlement based on the representations made in court today." The order subsequently filed, which the parties approved as to form, orders in pertinent part:

1.   The parties have made a binding agreement to settle this dispute.

2.   Two alterations are required to the settlement documents proffered by Plaintiff with its Motion, namely, (a) the Settlement Agreement must make clear that in the event of Default, Plaintiff cannot, through operation of the Settlement Agreement, obtain the entire unpaid amount of the Settlement Payment from the Annuity; and (b) the Settlement Agreement and the Mortgage must state that in the event of sale of the Las Campanas Property, Plaintiff will release the Mortgage.

3.   The parties are directed to execute the settlement documents, as provided herein.

Settlement documents were prepared and delivered to Defendant, but Defendant did not sign or deliver them to Plaintiff as ordered by the district court. Plaintiff filed a motion asking the district court to require Defendant to execute the settlement documents as previously ordered, and after a hearing was set on the Motion to Show

Cause, Defendant appealed to this Court. We dismissed that appeal

because no final order had been entered. Plaintiff then moved for entry of a final order, and the district court granted Plaintiff's motion in part and denied it in part. This final order gave rise to the appeal now before us.

It appears that the district court relied on language in the October 24, 2006 Letter Agreement but did not consider the portion of the settlement agreement that had been the subject of the hearing held on May 7, 2007—specifically the language regarding the retirement account and mortgage. Instead, the district court ruled that Defendant was in default, the entire amount was owed, and foreclosure proceedings against the Santa Fe property could be initiated. On appeal, Plaintiff asserts that the district court erred in failing to enforce the retirement-related portion of the settlement agreement. We agree.

**DISCUSSION**

We review mixed questions of fact and law for substantial evidence to support factual findings and conduct a de novo review of the application of those facts to conclusions of law. *Ponder v. State Farm Mut. Auto. Ins. Co.*, 2000-NMSC-033, ¶ 7, 129 N.M. 698, 12 P.3d 960.

A settlement agreement is a form of contract, *Builders Contract Interiors, Inc. v. Hi-Lo Industries, Inc.*, 2006-NMCA-053, ¶ 7, 139 N.M. 508, 134 P.3d 795, which must be factually supported by an offer, an acceptance, consideration, and mutual

8

assent to be legally valid and enforceable. *Guest v. Allstate Ins. Co.*, 2009-NMCA-037, ¶ 12, 145 N.M. 797, 205 P.3d 844. The parties in this case formed a valid and enforceable settlement agreement as recognized by the district court.

New Mexico has a strong policy in favor of settlement agreements, *Builders Contract Interiors, Inc.*, 2006-NMCA-053, ¶ 7, and this Court has consistently enforced settlement agreements. *Montano v. N.M. Real Estate Appraiser's Bd.*, 2009-NMCA-009, ¶ 12, 145 N.M. 494, 200 P.3d 544. Courts are without authority to change or rewrite the terms of parties' contracts. *State ex rel. Robins v. Hodges*, 105 N.M. 48, 49, 728 P.2d 458, 459 (1986); *see United Props. Ltd. v. Walgreen Props., Inc.*, 2003-NMCA-140, ¶ 10, 134 N.M. 725, 82 P.3d 535. Nor can a court change the language of a contract "for the benefit of one party to the detriment of another." *Nearburg v. Yates Petroleum Corp.*, 1997-NMCA-069, ¶ 23, 123 N.M. 526, 943 P.2d 560. Rather, courts have a duty to enforce agreements as made by the parties. *See Lazo v. Bd. of County Comm'rs*, 102 N.M. 35, 38, 690 P.2d 1029, 1032 (1984). This Court has previously noted:

> Because of their favored status, there must be a compelling basis to set aside a settlement agreement. We will allow equity to interfere with enforcing clear contractual obligations only when well-defined equitable exceptions, such as unconscionability, mistake, fraud, or illegality justify deviation from the parties' contract.

*Montano*, 2009-NMCA-009, ¶ 12 (quoting *Cortez v. Cortez*, 2007-NMCA-154, ¶ 14,

143 N.M. 66, 172 P.3d 615, *rev'd on other grounds* 2009-NMSC-008, 145 N.M. 642, 203 P.3d 857). The case at bar presents no such "compelling basis" or "exception."

The "default provision" enforced by the district court was included in the agreement, but the district court ignored other parts of the agreement. The district court previously ordered that the documents be prepared and executed to include the retirement-related agreement. Failure to enforce this provision in the circumstances of this case amounts to improperly rewriting the agreement. The retirement-related agreement was incorporated into the settlement as a way of preventing default. The failure to enforce that provision has left Plaintiff without a remedy that was intended by the parties. Defendant negotiated and agreed to provide his retirement funds as a form of security for his debt. Since the filing of Plaintiff's motion for entry of a final order, more payments have come due. No mortgage was ever placed on the Las Campanas Property. The terms of the settlement agreement required payments to be made from the retirement account and required a mortgage to be placed on the Las Campanas Property which was to be removed upon sale. We leave it to the district court to calculate what payments are subject to specific performance and how to deal with Defendant's refusal to sign a mortgage after agreeing to do so. The district court has the power to fashion a remedy that would enforce the agreement made by the parties. Rule 1-070 NMRA.

**CONCLUSION**

For the foregoing reasons, we reverse and remand for proceedings in accordance with this opinion.

**IT IS SO ORDERED.**

_____

**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**

_____

**CELIA FOY CASTILLO, Judge**

_____

**TIMOTHY L. GARCIA, Judge**